UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | NO. 1:16-CV-6544 |
| PLAINTIFF, | |
| V. | HON. WILLIAM H. PAULEY III |
| DEUTSCHE BANK AG, | |
| DEFENDANT. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF THE PROPOSED CONSENT ORDER OF PRELIMINARY INJUNCTION AND
OTHER EQUITABLE RELIEF AGAINST DEUTSCHE BANK AG

## TABLE OF CONTENTS

I.   Background................................................................................................. 2

II.   The Proposed Consent Order .............................................................. 6

   A.   The Court Has the Authority to Enter the Proposed Consent Order .............................. 7

   B.   The Terms of the Proposed Consent Order, Including its Enforcement Mechanisms, are Clear ........................................................................................... 8

   C.   The Proposed Consent Order Seeks to Address the Allegations of the Complaint ......... 9

   D.   The Proposed Consent Order is Not the Product of Improper Collusion...................... 10

   E.   The Preliminary Injunction Serves the Public Interest.................................................... 10

III.   Conclusion ........................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Benjamin v. Jacobson*, 172 F.3d 144 (2d Cir. 1999) ...................................................................... 8

*CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669 (S.D.N.Y. 1979) ............................... 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .......................... 12

*In re Tronox Inc.*, No. 14-cv-5495, 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ................ 8, 12

*SEC v. Alanar, Inc.*, No. 1:05-cv-1102, Dkt. No. 8 (S.D. Ind. July 26, 2005) ............................ 11

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ........................................................................... 10

*SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285 (2d Cir. 2014) .............................. 7, 10, 11, 12

*SEC v. Hitachi, Ltd.*, No. 1:15-CV-01573, 2015 WL 7566666 (D.D.C. Nov. 24, 2015)... 7, 11, 12

*SEC v. Subaye, Inc.*, No. 13-CIV-3144, 2014 WL 4652578 (S.D.N.Y. Sept. 18, 2014)............ 8, 9

*SEC v. Trabulse*, 526 F. Supp. 2d 1008 (N.D. Cal. 2007) ........................................................... 11

*SEC v. Worldcom, Inc.*, No. 02 CIV. 4963, 2002 WL 1788032 (S.D.N.Y. Aug. 2, 2002) .......... 11

*United States v. Int'l Bus. Machines Corp.*, No. 14-cv-936, 2014 WL 3057960
   (S.D.N.Y. July 7, 2014) ....................................................................................................... 7, 8, 10

**Statutes**

7 U.S.C. §13a-1……………………………………………………………………………………8, 10

Section 727 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub.
   L. No. 111-203, Title VII § 727, 124 Stat. 1376....................................................................... 2

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | NO. 1:16-CV-6544 |
| PLAINTIFF, | |
| V. | HON. WILLIAM H. PAULEY III |
| DEUTSCHE BANK AG, | |
| DEFENDANT. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF THE PROPOSED CONSENT ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEUTSCHE BANK AG

Pursuant to this Court's Order issued on September 22, 2016 (Dkt. No. 10), Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") submits this Memorandum of Points and Authorities in Support of its Notice of Motion for Entry of the Proposed Consent Order of Preliminary Injunction and Other Equitable Relief ("proposed Consent Order") against Deutsche Bank AG ("Deutsche Bank"). (Dkt. No. 4.) As set forth below, the CFTC respectfully requests that the Court enter the proposed Consent Order because it is fair, reasonable, and within the public interest. The CFTC notes the preliminary nature of the proposed Consent Order, and underscores its necessity given Deutsche Bank's past and ongoing violations of the Commodity Exchange Act ("Act"), 7 U.S.C. § 1 *et seq*. (2012), Commission Regulations ("Regulations"), 17 C.F.R. § 1.1 *et seq*. (2016) and the CFTC Order entered against Deutsche Bank in September 2015 ("CFTC Order"), CFTC Dkt. No. 15-40. To that end, the CFTC includes recommendations for appointment of an independent monitor filed as Exhibit 1 to this Memorandum.

# I.      Background

On August 18, 2016, the CFTC filed a Complaint for Injunctive Relief, Civil Monetary Penalty, and Other Equitable Relief ("Complaint") against Deutsche Bank. (Dkt. No. 1.) To enhance transparency, promote standardization, and reduce systemic risk, Section 727 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII § 727, 124 Stat. 1376 (enacted July 21, 2010) ("Dodd-Frank Act"), added a provision to the Act that requires all swaps to be reported to a swap data repository ("SDR") and establishes requirements for real-time reporting and public availability of swap transaction data. (Compl. ¶ 9; Paragraph 2 of the Declaration of Daniel J. Bucsa, attached hereto as Exhibit 2).

Pursuant to these requirements, the CFTC implemented Regulations under 17 C.F.R. pts. 43 and 45 (2016). (Compl. ¶ 10; Ex. 2 ¶ 3.) Part 43 and Part 45 of the Regulations require reporting parties to timely and accurately report, among other things, the following: (1) messages that constitute real-time, publicly reportable swap transactions ("real-time data"); (2) all required swap creation data ("creation data"); and (3) required swap continuation data ("continuation data"). (Compl. ¶ 10; Ex. 2 ¶ 3.) One required data field in both creation and continuation data is the legal entity identifier ("LEI") field. (Compl. ¶ 10; Ex. ¶ 4.)  Reporting parties are also required to correct any errors in swap data that were previously reported to ensure that the information disseminated to the market and the Commission remains current and accurate. (Compl. ¶ 10; Ex. 2 ¶ 5.) Additionally, Part 23 of the Regulations contains certain supervision directives for provisionally-registered swap dealers such as Deutsche Bank, including the requirement to have a Business Continuity and Disaster Recovery Plan to implement in the event of a disruption of the swap dealer's normal business activities. (Compl. ¶ 10; Ex. 2 ¶ 6.)

The Complaint alleges that from at least April 16, 2016, and continuing to the present, Deutsche Bank violated and continues to violate the CFTC Order, as well as certain sections of the Act and Regulations, by failing to report swap data for numerous asset classes within the parameters set forth in the Regulations. (Compl. ¶ 1.) In brief, the CFTC alleges that on April 16, 2016, Deutsche Bank experienced an outage that prevented Deutsche Bank from reporting any swap data for multiple asset classes for approximately five days (the "System Outage"). Deutsche Bank's subsequent efforts to end the System Outage repeatedly exacerbated existing reporting problems and often led to the discovery and/or creation of new reporting problems, many of which violate the CFTC Order. (Compl. ¶ 1.)

Precisely, the CFTC alleged that Deutsche Bank violated 7 U.S.C. §§ 2(a)(13)(F) and (G) (2012), 17 C.F.R. §§ 43.3(a), 43.4(a), 45.3(b)(1)(i), (b)(3)(i), (c)(1)(i)(A), and (c)(1)(iii), 45.4(a), (c)(1)(i) and (c)(2)(i), 45.6, 45.14(a), 23.602, and 23.603 (2016), and the CFTC Order in various ways, across numerous swap asset classes, by failing to report swap data in the manner required by the Act and Regulations. (Compl. ¶ 2.) The CFTC's Complaint against Deutsche Bank was the culmination of an investigation involving extensive and ongoing self-reporting from Deutsche Bank, during which CFTC staff communicated with Deutsche Bank's counsel and other representatives from Deutsche Bank on a weekly basis over the course of many months. (Paragraph 3 of the Declaration of Amanda L. Burks, attached hereto as Exhibit 3.) During these discussions, CFTC staff learned the following facts:

- Deutsche Bank failed to report *any* swap data (both real-time and primary economic terms ("PET") data) for the Commodities, Equities, and Foreign Exchange ("FX") swap asset classes for a period of approximately five days. (Compl. ¶¶ 15-17; Ex. 3 ¶ 4.) While Deutsche Bank backloaded at least some of this data since the System

Outage, a general review of the data backloaded after the System Outage revealed persistent problems with the integrity of certain "life cycle event" data fields, including numerous invalid LEIs. (Compl. ¶ 21; Paragraphs 5-6 of the Declaration of Richard Jason Fairbanks, attached hereto as Exhibit 4.)

• On May 12, 2016, all real-time reporting for FX swaps stopped for approximately 24 hours when one message became "stuck in the queue" and prevented all other messages from being processed. (Compl. ¶ 22; Ex. 3 ¶ 5.) As a result, at least 10,000 real-time FX swap messages were submitted at least 24 hours after execution. (Compl. ¶ 22; Ex. 4 ¶ 7.)

• On June 15, 2016, a scheduled International Monetary Market ("IMM") date, Deutsche Bank's real-time reporting for FX swaps slowed dramatically as the result of an update to Deutsche Bank's swap data reporting platform that was installed in response to the System Outage. (Compl. ¶ 23; Ex. 3 ¶ 6.) As a result, all real-time FX swaps messages were reported more than 23 hours after execution. (Compl. ¶ 23; Ex. 4 ¶ 8.)

• On Saturday, July 9, 2016, unbeknownst to relevant management, Deutsche Bank staff ran an update to the server it uses to report its FX messages to the SDR. (Compl. ¶ 24; Ex. 3 ¶ 7.) To run this update, Deutsche Bank disconnected an essential server, such that the server could not transmit any FX messages to the SDR. (Compl. ¶ 24; Ex. 3 ¶ 7.) However, after the update was complete, the server was not reconnected. (Compl. ¶ 24; Ex. 3 ¶ 7.) Although an error message was generated, this particular type of error message had not been preselected for managerial review. (Compl. ¶ 24; Ex. 3 ¶ 7.) Thus, the error was instead automatically overridden by Deutsche Bank's "system." (Compl. ¶ 24; Ex. 3 ¶ 7.) Because of the failure to transmit FX messages to the SDR, Deutsche

4

Bank staff subsequently observed what they (correctly) deemed to be unusually low volumes of reported messages. (Compl. ¶ 24; Ex. 3 ¶ 7.) However, rather than report this anomaly to management or investigate its cause, Deutsche Bank staff simply assumed that it was a "slow week." (Compl. ¶ 24; Ex. 3 ¶ 7.) Ultimately, the connectivity issue was discovered and corrected on or about July 14, 2016. (Compl. ¶ 24; Ex. 3 ¶ 7.) As a result, Deutsche Bank did not report *any* real-time data or PET data for any FX swaps from July 11 through July 14, 2016. (Compl. ¶ 24; Ex. 3 ¶ 7.)

- On August 2, 2016, Deutsche Bank counsel notified CFTC staff that tens-of-thousands of reportable FX messages had not been reported to the SDR. (Compl. ¶ 25; Ex. 3 ¶ 8.) Deutsche Bank counsel informed the CFTC that this problem was the result of an upgrade that Deutsche Bank ran in an attempt to end the System Outage. (Compl. ¶ 25; Ex. 3 ¶ 8.)

- On the next IMM date, September 21, 2016, Deutsche Bank counsel told CFTC staff that Deutsche Bank experienced another slowdown in its real-time FX reporting due to the high volume of transactions that day. (Ex. 3 ¶ 9.) Counsel stated that this reporting delay was similar to the delay Deutsche Bank experienced on the last IMM date in June. (Ex. 3 ¶ 9.) Subsequently, CFTC staff confirmed that Deutsche Bank reported the majority of its real-time data for FX swaps that day more than an hour after execution. (Ex. 4 ¶ 9.)

These facts demonstrate that Deutsche Bank alone has not been able to repair the persistent, complex, and ongoing problems that plague its swap data reporting system. Indeed, Deutsche Bank's attempts to remedy many of its swap reporting problems thus far have either worsened existing problems or created new issues. As a result, the CFTC proposed, and

Deutsche Bank agreed, to seek the appointment of an independent monitor to oversee and facilitate the implementation of appropriate measures for the generation of accurate, complete, and timely swap data reports by Deutsche Bank, as required by the Act and Regulations.

## II.    The Proposed Consent Order

The proposed Consent Order seeks preliminary injunctive relief, and is not intended to be a final settlement of claims alleged in the Complaint. Indeed, no issue of fact is resolved and no wrongdoing is admitted by the entry of the proposed Consent Order. Instead, if entered, the proposed Consent Order will appoint an independent monitor to ensure Deutsche Bank's compliance with its swap data reporting responsibilities under the Act and Regulations. (Consent Order ¶¶ 4-5.)

The proposed Consent Order provides the general framework necessary for the monitor to assess the swap data reporting problems at Deutsche Bank, and requires the monitor to submit a proposed plan to the Court within 90 days of the monitor's appointment. (Consent Order ¶ 9.) The monitor's proposed plan will include a suggested timeline, subject to Court approval, to complete the tasks necessary to bring Deutsche Bank into compliance. (Consent Order ¶ 6.) Once the monitor completes each task, as directed and overseen by the Court, the CFTC intends to seek a permanent injunction, civil monetary penalties, and other equitable relief in a final order resolving the matter. (Consent Order ¶ 23.)

The Court instructed the CFTC to submit a Memorandum of Points and Authorities setting forth the reasons why the proposed Consent Order is fair, reasonable, and in the public interest. (Dkt. No. 10 at p. 2.) Although the relevant case law exclusively addresses the entry of proposed consent orders as final settlements, the proposed Consent Order meets those requirements albeit in the context of the preliminary injunction.

6

The Court should approve the proposed Consent Order if it is "fair and reasonable," and if "the public interest would not be disserved" by the injunctive relief.[1] *See SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294-95 (2d Cir. 2014) (holding held that "the primary focus of the inquiry… should be on ensuring the consent decree is procedurally proper" based on "objective measures" that do not "infringe on the SEC's discretionary authority to settle on a particular set of terms."). To determine whether an enforcement decree is fair and reasonable, courts assess the following four factors: (1) the basic legality of the decree, (2) whether the terms of the decree, including its enforcement mechanisms, are clear, (3) whether the decree reflects a resolution of the actual claims alleged in the complaint, and (4) whether the decree is tainted by improper collusion. *Id.* at 295. If the decree seeks injunctive relief, the district court must also ensure that the "public interest would not be disserved" by the entry of the decree. *Id.* at 294. "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet the requirements, the district court is required to enter the order." *Id.* As discussed below, each of these factors favor the entry of the proposed Consent Order.

### A. The Court Has the Authority to Enter the Proposed Consent Order

The "basic legality" requirement is satisfied when the court has the authority to enter a proposed consent order and the agency has the authority to enforce it. *See United States v. Int'l Bus. Machines Corp.*, No. 14-cv-936, 2014 WL 3057960, at *2 (S.D.N.Y. July 7, 2014) (Karas, J.). A federal statute may grant the district court with authority in this context. *See e.g., Int'l Bus.*

---

[1]     "Adequacy" is unnecessary in cases involving an enforcement agency because such consent decrees do not preclude future claims by potential plaintiffs with private rights of actions, if such persons exist. *See Citigroup*, 752 F.3d at 294 (finding "adequacy" in review of consent decree "appears borrowed from the review applied to class action settlements, and [is] particularly inapt in the context of a proposed SEC consent decree."); *SEC v. Hitachi, Ltd.*, No. 1:15-CV-01573, 2015 WL 7566666, at *3 (D.D.C. Nov. 24, 2015) (declining to consider adequacy of proposed consent judgment).

*Machines*, 2014 WL 3057960, at *2 ("basic legality" requirement met when consent decree was consistent with federal statute); *In re Tronox Inc.*, No. 14-cv-5495, 2014 WL 5825308, at *9 (S.D.N.Y. Nov. 10, 2014) (Forrest, J.) (same); *contra Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir. 1999) (terminating consent decree inconsistent with statutory requirements).

As a threshold issue, the court must have personal and subject matter jurisdiction to meet the "basic legality" requirement. This Court has both personal and subject matter jurisdiction in this case pursuant to 7 U.S.C. § 13a-1 (2012). Specifically, the CFTC is authorized to bring an injunctive action in district court when an entity "has engaged, is engaging, or is about the engage in any act or practice constituting a violation of any provision of [the] Act or any rule, regulation, or order thereunder…." 7 U.S.C. § 13a-1(a). Further, under the terms of the proposed Consent Order, the parties agree that this Court has jurisdiction over the parties, subject matter, and transactions at issue in this action. (Consent Order ¶¶ 1-2.) Therefore, the jurisdictional requirements are met.

Additionally, the proposed Consent Order includes an acknowledgement that Deutsche Bank understands that the terms of the proposed Consent Order are enforceable through contempt proceedings to be initiated by the CFTC before this Court. (Consent Order ¶ 20.) Because the proposed Consent Order is properly before this Court and the CFTC has the authority to enforce it, the "basic legality" requirement is met.

## B. The Terms of the Proposed Consent Order, Including its Enforcement Mechanisms, are Clear

The terms of the proposed Consent Order are clear and sufficiently specific. In this context, "clear" means that the decree "properly define[s]" its key provisions. *Int'l Bus. Machines*, 2014 WL 3057960, at *3 (consent decree deemed sufficiently specific with defined key terms and outline of enforcement mechanisms); *SEC v. Subaye, Inc.*, No. 13-CIV-3144,

8

2014 WL 4652578, at *4 (S.D.N.Y. Sept. 18, 2014) (Castel, J.) (finding clear terms and enforcement mechanisms in consent decree), *reconsidered in part*, 2014 WL 5374957 (S.D.N.Y. Oct. 16, 2014).

The proposed Consent Order appoints a monitor "to oversee the implementation of appropriate measures for the generation of accurate, complete, and timely swap data reports by Deutsche Bank, as required by the Act and Regulations." (Consent Order ¶ 4.) The proposed Consent Order also details the powers of the monitor to execute its mandate. (Consent Order ¶¶ 6-7.) In addition, the proposed Consent Order includes an acknowledgement that Deutsche Bank understands that the terms of the proposed Consent Order are enforceable through contempt proceedings to be initiated by the CFTC before this Court. (Consent Order ¶ 20.) As a result, the terms of the proposed Consent Order, including its enforcement mechanisms, are sufficiently clear.

### C.  The Proposed Consent Order Seeks to Address the Allegations of the Complaint

The preliminary injunctive relief sought in the proposed Consent Order is the first step in addressing the allegations in the Complaint because the entire scope of Deutsche Bank's swaps reporting problems is unknown. Deutsche Bank's swap data processing and reporting systems are complex. Accordingly, the proposed Consent Order seeks appointment of a monitor who will conduct an initial assessment of Deutsche Bank's swap data processing and reporting systems. This assessment will inform the monitor's recommendations to bring Deutsche Bank into compliance with the swap data reporting requirements in the Act and Regulations that the Complaint alleges Deutsche Bank violated. (Consent Order ¶¶ 4-5.) Because the role of the monitor is to ensure Deutsche Bank's compliance with its swap reporting obligations, the proposed Consent Order is intended to address the allegations in the Complaint.

### D. The Proposed Consent Order is Not the Product of Improper Collusion

The proposed Consent Order is the product of considerable, arms-length negotiations between the CFTC and Deutsche Bank, as represented by competent and experienced counsel. *See e.g.*, *Citigroup*, 752 F.3d at 295-96; *Int'l Bus. Machines*, 2014 WL 3057960, at *3-4. In this case, negotiations took place over several months and involved senior CFTC staff, Deutsche Bank executives, and counsel for Deutsche Bank. Consequently, there was no improper collusion involved in the negotiation of the proposed Consent Order.

### E. The Preliminary Injunction Serves the Public Interest

The preliminary injunction in the proposed Consent Order is a suitable remedy and serves the public interest. The CFTC is authorized by statute to seek preliminary injunctive relief in district court "[w]henever it shall appear to the [CFTC] that any registered entity or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of [the Act] or any rule, regulation, or order thereunder…." 7 U.S.C. § 13a-1. This statutory injunctive relief is appropriate when the CFTC makes a *prima facie* showing that (1) a violation occurred and that (2) future violations are likely. *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 676-77 (S.D.N.Y. 1979) ("[u]nlike private injunctive actions, which require a showing of irreparable harm or the lack of an adequate remedy at law, statutory injunctive actions brought by the Commission require merely that there is a reasonable likelihood of future violations of the law by the defendant."); *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998) (same). However, the Court need not make a determination regarding the alleged violations of the Act and Regulations in order to enter the proposed Consent Order. *Citigroup*, 752 F.3d at 295-96 (while court should "establish that a factual basis exists for the proposed decree," parties meet this requirement by "setting out the colorable claims, supported

by factual averments by the [agency], neither admitted nor denied by the wrongdoer"). Further, Deutsche Bank waives the entry of findings of fact and conclusions of law pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure in the proposed Consent Order. (Consent Order ¶ 3.a.) Moreover, in certain circumstances, federal courts enter preliminary injunctions appointing independent monitors to oversee the defendant's operations. *See e.g.*, *SEC v. Worldcom, Inc.*, No. 02 CIV. 4963, 2002 WL 1788032, at *1 (S.D.N.Y. Aug. 2, 2002) (Rakoff, J.) (entering consent order appointing monitor to exercise complete "oversight responsibility with respect to all compensation paid by [defendant]"); *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1019 (N.D. Cal. 2007) (entering preliminary injunction appointing monitor to oversee the operation of hedge fund); *SEC v. Alanar, Inc.*, No. 1:05-cv-1102, Dkt. No. 8 (S.D. Ind. July 26, 2005) (entering consent order appointing monitor to oversee day-to-day operations of defendants), a copy of which is attached hereto as Exhibit 5.

The facts as alleged in the Complaint and substantiated above demonstrate that Deutsche Bank violated and continues to violate 7 U.S.C. §§ 2(a)(13)(F) and (G) (2012), 17 C.F.R. §§ 43.3(a), 43.4(a), 45.3(b)(1)(i), (b)(3)(i), (c)(1)(i)(A), and (c)(1)(iii), 45.4(a), (c)(1)(i) and (c)(2)(i), 45.6, 45.14(a), 23.602, and 23.603 (2016), and the CFTC Order. Therefore, the Court has the necessary factual and legal support to enter the injunctive relief in the proposed Consent Order.

The preliminary injunctive relief requested in the proposed Consent Order is also in the public interest. When an injunction is sought, the parties must demonstrate that the relief requested serves the public interest. *Citigroup*, 752 F.3d at 296. In other words, "that the agreement is not unlawful, unreasonable, or against public policy." *Hitachi*, 2015 WL 7566666, at *4 (citation omitted). Under this consideration, however, "[t]he job of determining whether the

proposed … consent decree best serves the public interest…rests squarely with the [federal government], and its decision merits significant deference." *Citigroup*, 752 F.3d at 296-97 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984)).

Courts have determined that settlements containing injunctions are in the public interest when the injunction facilitates enforcement of a federal statute. *See e.g., Tronox*, 2014 WL 5825308, at *9 (finding permanent injunction was in public interest because it enforced federal environmental laws). An injunction also protects the public when it serves as a warning of potential violations of federal law. *See e.g., Hitachi*, 2015 WL 7566666, at *4 (finding permanent injunction protected public "by warning the public of potential violations and serves as a reminder to other international companies the importance of careful due diligence and other controls to ensure compliance with U.S. anti-corruption laws….").

In this case, the preliminary injunction sought serves the public interest because it seeks to ensure a fair and transparent marketplace. All provisionally-registered swap dealers, like Deutsche Bank, that are the reporting counterparty are responsible for reporting the swap data described above to the SDR. (Ex. 2 ¶ 3.) Deutsche Bank's alleged failures to report timely, accurate, and complete real-time data deprived the trading community of a true representation of the market. (Ex. 2 ¶ 7.) These failures harm market participants who access the real-time databases to, among other things: (1) obtain timely pricing information, (2) compare execution services, and (3) assess overall market activity. (Ex. 2 ¶ 7.) Simply put, without timely, accurate, and complete reporting, market participants are left with a dubious representation of the swaps markets. (Ex. 2 ¶ 7.)

Failure to completely and accurately report swap data also creates a regulatory harm by increasing uncertainty surrounding systemic risk monitoring and oversight. (Ex. 2 ¶ 8.)

Deutsche Bank's alleged failures to report timely, accurate, and complete creation data and continuation data inhibited the CFTC's ability to perform its duties under the Dodd-Frank Act. (Ex. 2 ¶ 8.) To a certain degree, Deutsche Bank's alleged violations placed the market and the CFTC into a pre-Dodd-Frank Act environment obscured by a lack of information concerning its swap transactions. (Ex. 2 ¶ 8.) Because the preliminary injunctive relief seeks to remedy these violations, the proposed Consent Order is in the public interest.

### III.    Conclusion

For the reasons set forth above, the CFTC respectfully submits that the proposed Consent Order is fair, reasonable, and in the public interest, and therefore, should be approved and entered by the Court.

Dated:  September 30, 2016               Respectfully Submitted,
                                         Attorneys for Plaintiff
                                         U.S. Commodity Futures Trading Commission

                                         /s/Amanda L. Burks
                                         Amanda L. Burks
                                         Senior Trial Attorney
                                         Admitted *pro hac vice*
                                         aburks@cftc.gov

                                         James H. Holl III
                                         Chief Trial Attorney
                                         Admitted *pro hac vice*
                                         jholl@cftc.gov

                                         Richard A. Glaser
                                         Deputy Director
                                         New York Bar No. 8652
                                         rglaser@cftc.gov

13

U.S. Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre
1155 21st Street NW
Washington, D.C. 20581
(202) 418-5000 (Main)
(202) 418-5968 (Burks)
(202) 418-5311 (Holl)
(202) 418-5358 (Glaser)

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                                        PLAINTIFF,

 V.

DEUTSCHE BANK AG,

                                        DEFENDANT.

NO. 1:16-CV-6544

HON. WILLIAM H. PAULEY III

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2016, I filed a copy of the foregoing Memorandum of Points and Authorities in Support of the CFTC's Notice of Motion for Entry of the Proposed Consent Order of Preliminary Injunction and Other Equitable Relief using the CM/ECF system, which will automatically send electronic mail notification of such filing to all parties.

*/s/Amanda L. Burks*

15