```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   U.S. COMMODITY FUTURES TRADING
     COMMISSION,
 4
                      Plaintiff,
 5
                 v.                        16 CV 6544 (WHP)
 6
     DEUTSCHE BANK AG,
 7
                      Defendant.
 8
     ------------------------------x
 9                                        New York, N.Y.
                                          October 6, 2016
10                                        11:10 a.m.

11   Before:

12                   HON. WILLIAM H. PAULEY III,

13                                        District Judge

14                           APPEARANCES

15   U.S. COMMODITY FUTURES TRADING COMMISSION
          Attorneys for Plaintiff
16   AMANDA LEIGH BURKS
     RICHARD A. GLASER
17
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM
18        Attorneys for Defendants
     DAVID MEISTER
19   CHAD ERIC SILVERMAN

20   DEUTSCHE BANK COUNSEL ANDREW CATTELL

21

22

23

24

25
```

1          (Case called)

2          THE COURT:  Good morning, counsel.  I set this matter

3     down for a conference.

4          Who wants to be heard?

5          MS. BURKS:  We'd like to be heard, your Honor.

6          THE COURT:  Fine.  Would you take the podium, please.

7          MS. BURKS:  Your Honor, Deutsche Bank is required to

8     report certain swap data pursuant to the Commodity Exchange

9     Act, commission regulations, and pursuant to a prior CFTC

10    order entered last September.

11         In our complaint, the CFTC alleged that from at least

12    April 16, 2016, and continuing to the present, Deutsche failed

13    and continues to fail to meet many of these swap reporting

14    obligations.

15         THE COURT:  The problems go back long before that

16    though, don't they?

17         MS. BURKS:  The prior order entered last year by the

18    CFTC addressed conduct beginning in January 2013.  So, yes.

19    The initial problems do go back to the beginning of Deutsche

20    Bank's reporting obligations.

21         THE COURT:  January 2013 was essentially the time that

22    Deutsche Bank was first provisionally registered; right?

23         MS. BURKS:  That is correct.

24         THE COURT:  So, since the beginning, there have been

25    problems.

1          MS. BURKS:  That's correct, your Honor.  So the

2     parties are here today to request the entry of the proposed

3     consent order because it is fair and reasonable and because the

4     preliminary injunctive relief sought, namely, the appointment

5     of an independent monitor, serves the public interest by

6     ensuring the integrity of the data generated and reported by

7     Deutsche Bank.

8          To that end, at the Court's direction, the parties

9     have submitted three recommendations for potential monitors.

10    Your Honor, we also have the CVs and a slide deck from Chatham

11    Financial today for your consideration if you're so interested.

12         THE COURT:  I was going to ask for those materials in

13    any event.

14         What did the vetting process look like to select a

15    proposed monitor?

16         MS. BURKS:  From the CFTCs end, we conducted a broad

17    search.  I can tell you at the outset, it was a difficult task

18    because this is a relatively new space, but we searched for a

19    number of data reporting companies like Chatham Financial.  We

20    also interviewed a number of the larger consulting firms to see

21    if they had the ability to take on this role.

22         So we conducted a broad search on our end.

23    Unfortunately, there aren't a whole lot of entities in this

24    space that have experience taking on a task like this, but we

25    were able to find a few.  However, a lot of them were

1   conflicted.  They had already had ongoing business with

2   Deutsche Bank and admittedly could not serve as independent

3   monitors.

4           THE COURT:  How is swap reporting any different from

5   other reporting systems?

6           MS. BURKS:  Well, I suppose it's different in the

7   sense that it is a newer space.  So I think --

8           THE COURT:  What does that mean?

9           MS. BURKS:  Let me back up.  So when Congress passed

10  the Dodd-Frank Act, they tasked the Commission with overseeing

11  the swaps market and passing regulations that would allow for

12  this oversight.

13          To that end, the Commission drafted Part 43 and Part

14  45 of the Commission regulations that are at issue here today.

15  Those regulations explain what the swap reporting

16  responsibilities are for the dealers.

17          Part 43 reporting is the real-time public tape

18  recording requirement.  If you think about it, it is similar to

19  a stock ticker.  So this is real-time pricing information

20  that's coming from the source, coming from the dealers who are

21  entering these swap transactions.

22          So one of the challenges with Part 43 reporting is

23  making sure that swap data is submitted in a timely fashion

24  because the entire purpose of it is to provide real-time market

25  information to market participants in the public.

1          THE COURT:  Just like other financial markets; right?

2          MS. BURKS:  That's right.  That's right.  But it's a

3    newer space.  So, instead of, you know, submitting information

4    in the stock market, which has been done for years and years

5    and years, this is being conducted in the swaps market which

6    had never been done before previously.

7          Now, a different set of data is required to be

8    submitted under Part 45 of the regulations.  That set of data

9    is only for Commission use.  So it's a more voluminous set of

10   data, and it's used for the CFTC to evaluate systemic risk and

11   monitor market activity overall.

12         So it's a different set of data but also very

13   important.  There are critical, critical components for the

14   CFTC to meet its mission in regulating the swaps market.

15         THE COURT:  In the CFTC's September 30, 2015, order,

16   you refer to a consulting firm that Deutsche Bank retained to

17   resolve the issues that the CFTC had been investigating since

18   2014.  Right?

19         MS. BURKS:  That is correct.

20         THE COURT:  Who was that consulting firm?

21         MS. BURKS:  It was Deloitte.

22         THE COURT:  Is Deloitte still involved in this

23   process?

24         MS. BURKS:  I would have to defer to counsel.

25         THE COURT:  Why do you have to defer to counsel?

1      Isn't the CFTC monitoring these things?

2              MS. BURKS:  We are monitoring these things, and we

3      have received two interim reports from Deutsche Bank on their

4      progress under the 2015 order.

5              THE COURT:  Did you receive an interim report last

6      week on September 30?

7              MS. BURKS:  We received one, I believe, at the

8      beginning of this week, if I'm not mistaken.

9              THE COURT:  It would be helpful to the Court to see

10     those reports.

11             MS. BURKS:  I have copies of them if you'd like them

12     now, your Honor.

13             THE COURT:  You can hand them up at the conclusion of

14     the proceeding.

15             What I guess I'm trying to convey is that a court

16     needs information about what the CFTC and Deutsche Bank are up

17     to in this matter.

18             I directed that I wanted at least three candidates for

19     a monitorship, and you submit three names.  They are certainly

20     underwhelming, aren't they?

21             MS. BURKS:  We believe that Chatham Financial is best

22     suited to take on this task and that they --

23             THE COURT:  I know, but you nominated two others for

24     the Court's consideration.  Right?

25             MS. BURKS:  Yes.

1          THE COURT:  But you say you and Deutsche Bank didn't

2     complete your vetting of those individuals.  Right?

3          MS. BURKS:  So we fully vetted Chatham Financial, both

4     sides.

5          THE COURT:  What does that mean?

6          MS. BURKS:  So the CFTC and, as I understand it,

7     Deutsche Bank conducted numerous interviews and held several

8     meetings with representatives from Chatham Financial, and I

9     believe Deutsche Bank has also completed an engagement letter

10    with Chatham Financial that will become effective if they are

11    appointed in this matter.

12         THE COURT:  Who initially proposed Chatham Financial?

13    The CFTC or Deutsche Bank?

14         MS. BURKS:  I believe the CFTC initially proposed

15    Chatham Financial.  So, when we say "fully vetted,"

16    your Honor --

17         THE COURT:  Were you involved in that vetting process?

18         MS. BURKS:  Yes, I was.

19         THE COURT:  When you just say, "I believe," that's

20    just a figure of speech?  You're telling me that you're the

21    point person on it?

22         MS. BURKS:  I am.

23         THE COURT:  So did you propose Chatham Financial?

24         MS. BURKS:  Yes.

25         THE COURT:  Did you propose Messieurs Gregg and

1    Tupper?

2          MS. BURKS:  Those two candidates were proposed by

3    Deutsche Bank.

4          THE COURT:  Did the CFTC vet those individuals?

5          MS. BURKS:  We have not yet vetted those individuals.

6          THE COURT:  Do you know that according to his website,

7    Mr. Tupper is currently a full-time student at Emory Law

8    School?  Are you aware of that?

9          MS. BURKS:  I was not aware of that, your Honor.

10         THE COURT:  It's stunning.

11         Mr. Meister, was it your idea to suggest Mr. Tupper?

12         MR. MEISTER:  Your Honor, may I speak from here?

13         THE COURT:  No.  Take the podium for a moment.  I want

14   to be able to hear you.

15         MR. MEISTER:  Your Honor, I personally got engaged in

16   this matter after the bank had first spoken to Mr. Tupper.  So

17   it wasn't my personal suggestion.  However, we --

18         THE COURT:  Do you know that he's in some master's

19   program for nonlawyers at Emory University?

20         MR. MEISTER:  Your Honor, I did not know that.

21         THE COURT:  Well, I found it in two minutes.

22         MR. MEISTER:  I appreciate that, your Honor.  What we

23   were focusing on with respect to Mr. Tupper is his experience

24   in this area and thought that his experience is substantial

25   because of his association with swaps reporting for a number of

1    years.

2          THE COURT:  He says he's making a career change.

3    That's the best that Deutsche Bank can come up with?  Somebody

4    who is in a two-year, full-time program at Emory Law School as

5    a student?

6          MR. MEISTER:  Your Honor, actually, the best that we

7    could come up with was Chatham Financial.  As the CFTC had

8    suggested in its memorandum, it's accurate to say that that is

9    the best we could come up with.

10          THE COURT:  What experience does Chatham Financial

11   have in this, as CFTC's counsel has characterized it, "new

12   space"?

13          MR. MEISTER:  Your Honor, one of the things is that

14   Chatham Financial is a member of the CFTC's market risk

15   advisory group.  That group advises the Commission on matters

16   related to market structure, movement of risk across clearing

17   houses which implicates swaps reporting.  They advise on

18   matters such as risk across exchanges, intermediaries, market

19   makers, and users.

20          Chatham has built and managed a derivatives reporting

21   platform that's used by over 300 clients.  We understand,

22   Judge, that it's one of the largest third-party submitters of

23   trade reports to DTCC, which is the swaps data repository

24   relevant to this matter.

25          A number of different areas in Deutsche Bank through

1   this vetting process spoke directly with the Chatham people.

2   That's Deutsche Bank International tech, operations,

3   compliance, and legal.  And prior outside counsel also spoke

4   substantially to Chatham.

5          Judge, just to be transparent here, at least from

6   Deutsche Bank's perspective, we were comfortable with CFTC's

7   suggestion to vet Chatham, and we spent a lot of time -- the

8   bank spent a lot of time sitting with Chatham and being

9   comfortable with that.

10         It is true -- and we agree -- that it is difficult to

11  find an independent monitor with substantial experience in this

12  space.  I'm using the same words, but it is a brand new post

13  Dodd-Frank world.

14         THE COURT:  What makes it so different from other

15  spaces?

16         MR. MEISTER:  Because prior to Dodd-Frank and the

17  CFTC's promulgation of these rules, there was really no

18  regulation to speak of or this sort of regulation of the swaps

19  market.  There was no reporting.  There was no systems.  There

20  was no tape.  There was no provision of real-time information.

21         The banks and the dealers have been building these

22  systems from the ground up, and it's challenging, in part,

23  because of the speed with which the information has to be shot

24  to the tape and to the SDR.

25         We talk about the ticker tape.  The ticker tape has

1    been around for many years.  Those systems are embedded in the

2    broker/dealers, and they've been tinkered with for years and

3    years.  This is all brand new stuff.

4            The Dodd-Frank Act -- we support this.  The Dodd-Frank

5    Act brought the swaps market into transparency and into the

6    sunlight.  That was the purpose of all of this.

7            THE COURT:  That was nearly four years ago.

8            MR. MEISTER:  Yes.  Your Honor, that's one of the

9    reasons that I think we're sitting in this courtroom today is

10   because it was four years ago.

11           Deutsche Bank is committed, Judge.  These are just

12   words, but we're committed to getting the reporting obligations

13   corrected.  This is also why we consented to the appointment of

14   a monitor, so that the CFTC and hopefully your Honor is

15   satisfied with Deutsche Bank's efforts.

16           THE COURT:  Is Deloitte still serving as a consultant

17   on this matter?

18           MR. MEISTER:  No, your Honor.

19           THE COURT:  When was Deloitte discharged?

20           MR. MEISTER:  Your Honor, we can get you more

21   information on this, Judge.  The Deloitte engagement was

22   relatively narrow.  It is mentioned in the CFTC's letter, but

23   that was a relatively brief and narrow engagement.  We can't

24   hire Deloitte because they're not independent.  Deloitte has

25   other engagements with Deutsche Bank.

1          THE COURT:  Why can't a large financial institution

2     like Deutsche Bank utilize its own compliance and technology

3     departments to develop a plan to fix this matter?

4          MR. MEISTER:  Your Honor, we can.  We're committed to

5     doing that.  Again, we consent to the appointment of the

6     monitor, but whether or not your Honor appoints a monitor,

7     Deutsche Bank has its obligations.  It takes those obligations

8     seriously and is committed to getting all of its reporting

9     obligations met.

10          THE COURT:  Has it met its obligations under the

11    September 2015 order?

12          MR. MEISTER:  Yes, your Honor.  I say that because the

13    obligations are to -- there are a set of undertakings over a

14    period of months.  We filed the second interim report on

15    September 30.

16          Maybe it didn't make its way to the CFTC in Washington

17    before earlier this week, but we filed it on September 30.

18    We're happy to -- and I think the CFTC said as well that we're

19    happy to provide your Honor with the interim reports.

20          THE COURT:  What are the proposed terms of engagement

21    between Deutsche Bank and Chatham?

22          MR. MEISTER:  Yes, your Honor.  I can hand up a copy

23    if your Honor would like.  Can I just give a little bit of

24    background on this?

25          THE COURT:  Sure.

1           MR. MEISTER:  So, your Honor, the letter with Chatham

2     Financial is dated September 20, 2016.  That's a couple of days

3     before your Honor's order asking for three.

4           The letter is the culmination of back-and-forth with

5     Chatham between Deutsche Bank and Chatham to reach terms.  I

6     just wanted your Honor to know that we didn't sign the letter

7     of engagement after your Honor's order.  We signed it before.

8     But it is not effective unless your Honor appoints Chatham.

9           I think it's beneficial to have terms of engagement at

10    least with Chatham, although your Honor may not pick them and

11    your Honor may pick another monitor.  Or your Honor may not

12    appoint a monitor.  I understand that.

13          If your Honor were to pick Chatham, we would be ready

14    to hit the ground running.

15          May I approach?

16          THE COURT:  You may.

17          MR. MEISTER:  Your Honor, with respect to the letter

18    that I just handed up dated September 20, we would ask if

19    your Honor is going to file that, that it be filed under seal

20    because it contains confidential information of Deutsche Bank.

21          THE COURT:  Very well.  Very recently you submitted a

22    letter in which you noted that the CFTC intends to propose

23    extending the time for the monitor to make a first filing.

24          Why is that?

25          MR. MEISTER:  Perhaps the CFTC would be best to speak

1    to that, your Honor.  My understanding is there was a concern

2    that if your Honor were to appoint the monitor today, that the

3    90 days was too short of a period of time.  The exact reasons,

4    Judge, I'm not 100 percent sure of.

5              MS. BURKS:  I can speak to them.

6              THE COURT:  Sure.  Go ahead, Ms. Burks.

7              MS. BURKS:  We're again referring to paragraph 6 of

8    the proposed consent order, which requires the monitor to

9    provide the Court within 90 days of entry of the order an

10   initial assessment of a timeline of tasks to be completed at

11   Deutsche Bank.

12             The concern now is if the order is entered today, the

13   90-day period would fall across a number of holidays, and

14   scheduling necessary personnel at Deutsche Bank and Chatham to

15   meet and sit and really assess the problems in a fulsome manner

16   might be difficult to achieve over the holidays.  So we

17   requested -- and Deutsche Bank consented -- to an extension of

18   the 90-day deadline to 120 days.

19             THE COURT:  I'm just wondering why it takes 90 days to

20   examine a problem that's been longstanding.  The information is

21   out there.  Right?

22             MS. BURKS:  In a sense, your Honor, I think the

23   information is out there.  However, from my understanding of

24   Deutsche Bank's swap reporting systems, as rudimentary as it

25   is, it's an understanding that these systems are incredibly

1    complex.  They consist of a number of legacy systems that have

2    been kind of patched together over the years to achieve the new

3    swap reporting goals.

4              With that said, we anticipate that it will take some

5    time for the monitor to really dive in and figure out where all

6    the problems lie.  The idea here is to have a thorough analysis

7    of the complete system so that we're not back here in six

8    months on another reporting issue.  We want to make sure that

9    this is a fulsome report in the first instance to your Honor.

10             THE COURT:  Why does the CFTC think that the monitor

11   will need two years to implement the recommendations?

12             MS. BURKS:  At this stage, we're simply not certain of

13   the extent of the damage and the extent of the repairs

14   necessary.  So we put a two-year cap on the monitorship, but

15   we're hopeful that some, if not all of that, will be completed

16   before the two-year period ends.

17             THE COURT:  Aren't there other financial institutions

18   involved in the swaps market that have the technology and the

19   platforms established to correctly report?

20             MS. BURKS:  Yes.

21             THE COURT:  I just don't understand what the big

22   mystery is at Deutsche Bank.  What is it?  You've been on the

23   case for far longer than I have, since June of 2014.  So what

24   is it that makes Deutsche Bank so, I'll say incorrigible, when

25   it comes to straightening out their reporting system?

1          MS. BURKS:  I don't have that answer, your Honor.  I

2     cannot pinpoint exactly what the precise problems are with

3     Deutsche Bank, but I can tell you that the problems are

4     numerous, and all of the attempts thus far by Deutsche Bank to

5     correct these problems often resulted in more problems

6     developing.

7          So the system is certainly broken, and our goal here

8     today is to get an independent monitor on site at Deutsche Bank

9     to help them remediate all of the problems that plague their

10    swap reporting system and to bring them into compliance with

11    the regulations.

12         THE COURT:  It sounds like a crisis, doesn't it?

13         MS. BURKS:  Yes.

14         THE COURT:  Yet you come here now and tell me that you

15    want to extend from 90 days to 120 days the time for the

16    monitor to make some recommendations because there are holidays

17    and Deutsche Bank will be out on holiday.

18         Does that make any sense?

19         MS. BURKS:  If your Honor wishes that we expedite the

20    process to a shorter time period, we're certainly open to that.

21         THE COURT:  I will tell you that the process is going

22    to be expedited, and it's going to be all hands on deck when I

23    finally approve an order in the case.

24         It all seems rather casual at the moment.  Quite

25    frankly, what's reported in the CFTC's order and the

1    submissions, hundreds of thousands of transactions going

2    unreported, the entire integrity of the market is undermined.

3    People are going to worry about holidays?  Not in this

4    courtroom.

5          MS. BURKS:  Understood.

6          THE COURT:  If the problems are so fundamental, why

7    hasn't Deutsche Bank been suspended from swap transactions?

8          MS. BURKS:  There are a lot of considerations that go

9    into a decision like that.  One certainly would be the

10    integrity of the markets and the liquidity in the markets.

11          Deutsche Bank is certainly a large player in the swap

12    markets.  Our position from the beginning has been that we want

13    Deutsche Bank to correct these problems.  This appointment of a

14    monitor seemed like the best way to get them back on track

15    without disrupting all of the swap markets around the world by

16    just shutting them down.

17          As counsel stated, they have been committed to

18    cooperation thus far.  So we are hopeful that we can together,

19    along with the monitor, bring Deutsche Bank into compliance.

20          THE COURT:  Anything further?

21          MS. BURKS:  Nothing further, your Honor.

22          THE COURT:  Thank you.

23          Anything further, Mr. Meister?

24          MR. MEISTER:  Nothing further, your Honor.  Thank you.

25          THE COURT:  All right.  Did you, Mr. Meister, do

1    anything further to vet these people whose names were

2    submitted?

3            MR. MEISTER:  The other two?

4            THE COURT:  Yes.

5            MR. MEISTER:  Your Honor, we had telephone interviews

6    with both.  That's what we did, Judge.  Prior counsel also had

7    interviews with them.  Actually, I don't know if they spoke

8    directly to the CFTC staff.  Your Honor, that's what we did.

9    The result of that is what does come out, particularly with

10   respect to Mr. Tupper, is he has substantial experience in this

11   area.

12          On the other hand, Judge, as pointed out in their

13   memorandum, as your Honor pointed out, he may well have other

14   obligations.  He has told us that he is committed to this task

15   and is prepared to sign up, regardless of his --

16          THE COURT:  While going to law school full time?

17         MR. MEISTER:  I hear you, Judge.  Your Honor, I'm

18   reporting to you the vetting process.  The other part of it is

19   that if your Honor appointed him, we would have to hire a firm

20   to support him.  So I just wanted your Honor to understand it

21   would be a package.

22          THE COURT:  How about the other individual?

23         MR. MEISTER:  He also has experience, Judge, the same

24   sort of vetting process.  He also has experience but not as

25   substantial experience with this particular issue as

1   Mr. Tupper.

2            THE COURT:  Is he currently employed?

3            MR. MEISTER:  Your Honor, I don't believe so, but I'd

4   have to check that, Judge.

5            THE COURT:  The CFTC can hand up at the conclusion of

6   the proceeding the curriculum vitae and the slide presentation

7   for Chatham.  This Court is reserving decision with respect to

8   the matter.

9            I can tell you one thing however.  A monitor will be

10  appointed in this case, and Deutsche Bank better get ready to

11  cooperate fully with whoever it is that the Court appoints,

12  whether it's one of the nominees of the parties or someone

13  altogether different.

14            Anything else?

15            MR. MEISTER:  Nothing from Deutsche Bank, your Honor.

16  Thank you.

17            MS. BURKS:  We only ask that the CVs and the slide

18  deck from Chatham be placed under seal if they are made part of

19  the record because they contain confidential information.

20            THE COURT:  I find it a little strange that you would

21  nominate to the Court monitors, but you want their CVs under

22  seal.  I'm not going to do that.

23            I directed both parties to come up with a couple of

24  candidates because I don't like the presumptions of parties

25  that they can just prepackage what they want to do and go on

1   their merry way, especially when they've been on their merry

2   way for two years in this matter, and it seems like not much

3   has happened.

4          So I'm looking forward to seeing the reports.  You can

5   hand up those resumes and the slide presentation.  The only

6   thing that I will maintain under seal at this moment -- but

7   I'll feel free to discuss it in any forum that I choose -- is

8   the proposed engagement letter between Deutsche Bank and

9   Chatham.

10          Anything else?

11          MS. BURKS:  Nothing further, your Honor.  Thank you.

12          MR. MEISTER:  Just briefly, your Honor.  We would ask

13   that the interim reports be held under seal.  Those also

14   contain sensitive confidential information of Deutsche Bank.

15          THE COURT:  You can submit them to me under seal, but

16   it's likely that at some point as part of the record in this

17   case I'm going to direct that redacted copies be filed as part

18   of the record.  There is apparently considerable interest in

19   this case.  I'm not going to keep it in a black box.

20          MR. MEISTER:  Yes, your Honor.  Perhaps we can put in

21   a letter to your Honor as to why we think it's very important

22   to keep them under seal.

23          THE COURT:  I'll always be receptive to an argument

24   and an explanation and a submission.

25          MR. MEISTER:  Okay.  Thank you, your Honor.

1          THE COURT:  All right.  This matter is concluded.

2               (Adjourned)