UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
U.S. COMMODITY FUTURES TRADING          :
COMMISSION,                             :
                                        :   16cv6544
                  Plaintiff,            :
                                        :   OPINION & ORDER APPOINTING
         -against-                      :   INDEPENDENT MONITOR
                                        :
DEUTSCHE BANK AG,                       :
                                        :
                  Defendant.            :
----------------------------------------X

WILLIAM H. PAULEY III, District Judge:

    The U.S. Commodity Futures Trading Commission ("CFTC") brings this enforcement action against Deutsche Bank AG ("Deutsche Bank") alleging a chronic failure to comply with swap data reporting regulations under the Dodd-Frank Act. On August 18, 2016, simultaneous with the filing of its Complaint, the CFTC submitted a Proposed Consent Order of Preliminary Injunction and Other Equitable Relief against Deutsche Bank (the "Proposed Consent Order"). Among other things, the Proposed Consent Order provides for the appointment of an independent monitor. In its initial application, the CFTC informed this Court that the parties had agreed on an independent monitor that the CFTC would recommend to the Court at a subsequent hearing.

    On September 22, 2016, this Court directed the CFTC to propose at least three candidates that it could consider for the monitorship, and to submit a brief explaining why entry of the Proposed Consent Order would be fair, reasonable, and in the public interest. On October 6, 2016, this Court conducted a hearing to consider the CFTC's application.

I.   <u>Background</u>

The Dodd-Frank Act introduced sweeping reforms in the financial markets. One such reform centered on making the derivatives markets—which originally operated with scant oversight—more transparent. Dodd-Frank empowered the CFTC to promulgate rules and regulations requiring swap dealers, like Deutsche Bank, to comply with certain disclosure, recordkeeping, and reporting requirements concerning swaps transactions. <u>See</u> 17 C.F.R. §§ 43, 45 (2014).

More than one year ago, in September 2015, the CFTC issued an order commencing administrative proceedings against Deutsche Bank and imposing remedial sanctions (the "CFTC Order"). The CFTC Order recounts that as early as January 2013, Deutsche Bank failed to report cancellations of swap transactions, resulting in hundreds of thousands of reporting violations, errors, and omissions in its reporting. (CFTC Order at 4.) According to the CFTC Order, Deutsche Bank struggled to investigate the various messages it received from the swap data repository in a timely manner, and experienced technology-related failures concerning its reporting system. (CFTC Order at 4–5.)

Deutsche Bank retained a consultant and implemented changes designed to improve the accuracy and effectiveness of its reporting. (CFTC Order at 6.) In its negotiated settlement with the CFTC last year, Deutsche Bank also agreed to pay a $2.5 million fine, undertake a number of remediation efforts, and submit periodic reports updating the CFTC on its compliance efforts every six months. (CFTC Order at 9–10.)

But the reporting problems at Deutsche Bank continued, compelling the CFTC to initiate this enforcement action. According to the Complaint, Deutsche Bank's swap data reporting system crashed in April 2016, preventing the bank from reporting any swap data for

approximately five days. (Compl. ¶ 1.) Deutsche Bank's efforts to fix the outage only exacerbated the reporting problems and exposed other deficiencies. (See Compl. ¶¶ 15–18.) For example, Deutsche Bank discovered that its Business Continuity and Disaster Recovery Plan failed to prevent a system outage. The system then failed to re-boot, inhibiting Deutsche Bank's swap data reporting functions. Moreover, it appears that Deutsche Bank has struggled to report real-time data for foreign exchange (FX) swaps and submit accurate swap data information in a timely manner. (See Compl. ¶¶ 20–26.)

The consequences are significant. Inaccurate and untimely reporting of swaps data undermines the integrity of the markets, and impedes the CFTC's mission to protect swaps customers. This is particularly true because Deutsche Bank reportedly commands one of the largest derivatives portfolios in the world, valued at approximately €42 trillion.[1]

II.  CFTC's Proposed Consent Order

The CFTC argues that because the scope of Deutsche Bank's reporting problems are unknown and of a recurring nature, an independent monitor should be appointed to identify and evaluate those problems, and then oversee "implementation of appropriate measures for the generation of accurate, complete, and timely swap data reports by Deutsche Bank, as required by the Act and Regulations." (Proposed Consent Order ¶ 4; CFTC Memo of Law at 9–10.) The CFTC also contends that entry of the Proposed Consent Order is in the public interest because it will "ensure a fair and transparent marketplace" for both market participants and the CFTC. (CFTC Memo of Law at 12–13.)

On September 30, 2016, the CFTC purported to submit three candidates for consideration by this Court to be the independent monitor. But the CFTC candidly

---

[1] Jack Ewing, Deutsche Bank, Facing Criticism, Surveys Limited Options, THE N.Y. TIMES, July 27, 2016, available at: http://www.nytimes.com/2016/07/28/business/dealbook/deutsche-bank-q2-earnings.html.

acknowledged that one, Chatham Financial, is "best-suited to operate as the monitor in this matter." (CFTC Memo of Law, Ex. 1 at 1.) The CFTC notes that Chatham was "deeply vetted by the CFTC and Deutsche Bank, and recently agreed to terms in an engagement letter with Deutsche Bank" subject to this Court's approval. (CFTC Memo of Law, Ex. 1 at 2.) At the October 6 hearing, it became clear that the other two candidates had been proposed by Deutsche Bank and were offered merely to comply in form with this Court's earlier order. Counsel for the CFTC acknowledged that neither of them had been vetted. (Oct. 6, 2016 Hearing Tr. 8:5.) And during colloquy, Deutsche Bank's new counsel disavowed any involvement in proposing those candidates to the CFTC. (Oct. 6, 2016 Hearing Tr. at 8:17.)

This Court interviewed representatives of Chatham Financial. But with only one viable candidate to consider, this Court conducted its own search.

### III. Appointment of an Independent Monitor Is Warranted

While a "consent decree is essentially construed as a contract [between the parties], courts have inherent power to enforce the terms of such decree because they constitute court orders." Roberson v. Giuliani, 346 F.3d 75, 80 (2d Cir. 2003). The reviewing court should not substitute its judgment for that of the parties, but assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy. See S.E.C. v. Citigroup Global Mkts., Inc., 752 F.3d 285, 294 (2d Cir. 2014).

This Court agrees that the appointment of an independent monitor is warranted. "The power of the federal courts to appoint special masters to monitor compliance with their remedial orders is well established." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 145 (2d Cir. 2011) (citation omitted). This Court has broad discretion to appoint a compliance monitor as a form of equitable remedy, and may tailor the appointment order to "the

special needs of the individual case." U.S. v. Apple, 992 F. Supp. 2d 263, 280 (S.D.N.Y. 2014). Here, it is obvious that Deutsche Bank's efforts to comply with the September 2015 CFTC Order have not been sufficient. In such situations, the use of independent monitors is appropriate. Apple, 992 F. Supp. 2d at 280 ("external monitors have been found to be appropriate where consensual methods of implementation of remedial orders are 'unreliable'. . . .").

Accordingly, this Court appoints Paul S. Atkins, Esq. of Patomak Global Partners LLC as the independent monitor with all of the powers set forth in the Proposed Consent Order, which is also approved. Mr. Atkins has assured this Court that he and his firm have no conflicts of interest that would preclude them from this engagement.

Finally, this Court notes that Proposed Consent Order does not obligate the independent monitor to provide periodic reports to the Court. Use of external monitors, in addition to remediating the problems at hand, is "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause," namely this Court's duty to ensure that the Consent Order serves the public interest. La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957). This Court will confer ex parte with Mr. Atkins, as necessary and appropriate.

Dated: October 20, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.