| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,**<br><br>                 **PLAINTIFF,**<br><br>**V.**<br><br>**DEUTSCHE BANK AG,**<br><br>                 **DEFENDANT.** | **NO. 1:16-CV-6544** |

## CONSENT ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEUTSCHE BANK AG

On August 18, 2016, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Complaint against Deutsche Bank AG ("Deutsche Bank" or "Defendant") for Permanent Injunction, Civil Penalties, and Other Equitable Relief, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*.

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1. This Court has jurisdiction over the parties, subject matter, and transactions at issue in this action pursuant to 7 U.S.C. § 13a-1(a) (2012).

2. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e).

3. Defendant waives the following:

   a. The entry of findings of fact and conclusions of law for the purposes of this Order pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure;

   b. Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated

by the CFTC in conformity therewith, 17 C.F.R. §§ 148.1-30 (2016), relating to or arising from this action; and

c. Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007) relating to or arising from, this action.

## I. INJUNCTIVE RELIEF GRANTED

**IT IS THEREFORE ORDERED THAT:**

4. Pau<u>l S. Atkins </u> is appointed to serve as an independent monitor ("Monitor"), with the powers set forth herein while the litigation is pending. The Monitor's mandate shall be to oversee the implementation of appropriate measures for the generation of accurate, complete, and timely swap data reports by Deutsche Bank, as required by the Act and Regulations.

5. The Monitor is hereby empowered to ensure Deutsche Bank's compliance with its swap data reporting responsibilities under the Act and Regulations including, but not limited to, reporting obligations under 17 C.F.R. pts. 23, 43, 45, 46, and/or 50.

6. Within 90 days of the entry of this Order, the Monitor shall provide to the Court under seal, to the CFTC subject to FOIA confidential treatment, and to Deutsche Bank, a proposed timeline, not to exceed two years from the date of entry of this Order, to complete the following tasks:

a. Test, analyze, and provide recommendations for the remediation of Deutsche Bank's swap data reporting infrastructure, processes and procedures to ensure compliance with the Act and Regulations;

b. Assess the accuracy and completeness of previously submitted swap data since December 31, 2012, and correct errors and omissions in previously reported swaps data as required by 17 C.F.R. pts. 43 and 45; and

c. Evaluate the adequacy of Deutsche Bank's swap reporting policies and supervisory systems, including, but not limited to its Business Continuity Disaster Recovery Plan;

provided, however, that at any time following the entry of this Order, the Monitor may recommend and the CFTC may determine, subject to Court approval, that (i) an extension of the monitorship of up to one year is appropriate, and then the total term of the monitorship shall be so extended, or conversely, (ii) there exists a change in circumstances sufficient to eliminate the need for the monitorship, and that the other provisions of this Order have been satisfied, and then the term of the monitorship may be terminated early.

7. In order to provide the proposed timeline described in Paragraph 6 above, the Monitor shall:

a. Have full and complete access, subject to reasonable security protocols and policies and to Paragraphs 11, 13, and 14 herein, to Defendant's swap data systems (including, but not limited to, Deutsche Bank's Trade Data Warehouse ("TDW")) for the purpose of reviewing and assessing their adequacy;

b. Have the full and complete ability to interview all staff at Deutsche Bank whose responsibilities include swap data production, consumption, and reporting, subject to the terms of Paragraphs 11, 13, and 14 herein; and

c. Engage, and employ technology, software and hardware specialists, attorneys, accountants, auditors, consultants, and other independent contractors and

technical specialists ("Subcontractors") as the Monitor deems advisable or reasonably necessary in the performance of duties and responsibilities under the authority granted by this Order.

8. Upon the Court's approval of the Monitor's proposed timeline, the Monitor is authorized to make recommendations to remediate Deutsche Bank's swaps reporting with the expectation that Deutsche Bank will implement the recommendations in a timely and effective manner. However, within 30 days of receipt of the Monitor's recommendations, Deutsche Bank shall be permitted to advise the Monitor and the CFTC of any such recommendations that Deutsche Bank considers unnecessary, inappropriate, unduly burdensome, or for which it proposes an alternative solution. With respect to any such recommendations, Deutsche Bank may defer the adoption or implementation of the recommendations so long as it can propose in writing an alternative policy, procedure, or system designed to achieve the same objective or otherwise substantiate the basis for declining to implement the recommendation. If Deutsche Bank and the Monitor are unable to reach an agreement after 60 days, Deutsche Bank may petition the CFTC and, if necessary, the Court, for relief from the Monitor's disputed recommendation.

9. The Defendant shall pay the Monitor, and all Subcontractors hired by the Monitor as authorized herein, reasonable compensation for the performance of its duties pursuant to this Order, and for the actual costs of out-of-pocket expenses incurred by the Monitor, including expenses incurred by any Subcontractors. Compensation and expenses include, but are not limited to, legal, accounting, auditing, and technology fees, and remedial hardware and software costs. The full terms of any fee arrangement between Deutsche Bank and the Monitor and all Subcontractors shall be set forth in a separate engagement agreement, which shall incorporate

this Order by reference.  The Monitor shall send invoices with request for payment to the Defendant on a monthly basis with a copy to the CFTC.  Should a dispute arise concerning payment of compensation or expenses that cannot be resolved between the parties and the Monitor, the Monitor shall file a petition with the Court, under seal and subject to the terms of Paragraphs 13 and 14 herein, to resolve such dispute.  The Monitor shall not increase its hourly rates used as the basis for such fee applications during the term of the monitorship.

10. Deutsche Bank shall have the ability to perform routine conflict checks on any Subcontractor the Monitor proposes to engage, and shall notify the Monitor within 10 business days if any conflicts exist.  In the event that there is an unresolvable conflict, the Monitor shall propose additional individuals or entities within 10 days after receiving notice of the conflict. This process shall continue until Subcontractors are chosen that are acceptable to both parties. The Monitor and Deutsche Bank shall use their best efforts to complete the selection process within 30 days of the entry of this Order.

11. Deutsche Bank and the CFTC agree that no attorney-client relationship shall be formed between Deutsche Bank and the Monitor, and that:

   a. In the event that Deutsche Bank seeks to withhold from the Monitor access to information, documents, records, facilities, or current or former employees of Deutsche Bank that maybe subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where Deutsche Bank reasonably believes production would otherwise be inconsistent with applicable law, including applicable local law (such as relevant data protection and labor laws), Deutsche Bank shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor;

    b. If the matter cannot be resolved in accordance with Paragraph 11(a) herein, at the request of the Monitor, Deutsche Bank shall promptly provide written notice to the Monitor and the CFTC. Such notice shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access. The CFTC, at its discretion, may make further requests for access to such information, documents, records, facilities, or employees; and

    c. If the matter cannot be resolved in accordance with Paragraph 11(b) herein, Deutsche Bank shall seek a protective order via motion in this Court. Such motion shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access.

12. Neither the Monitor nor any Subcontractors engaged by the Monitor shall be treated for any purpose as an officer, employee, agent, or affiliate of Deutsche Bank or any of Deutsche Bank's subsidiaries or related entities, or the CFTC.

13. The Monitor and any Subcontractors shall take the appropriate steps to maintain the confidentiality of any information entrusted to them by Deutsche Bank or Deutsche Bank's subsidiaries, related entities, or employees while executing their duties and shall share such information only with the CFTC and the Court, on an as-necessary basis, in accordance with the provisions of this Order.

14. Any written materials generated by the Monitor and its Subcontractors will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of any such written materials could discourage cooperation, or impede pending

or potential government investigations and thus undermine the objectives of the monitorship. For these reasons, among others, written materials generated by the Monitor and its Subcontractors, as well as the content of any such written materials, shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the CFTC determines in its sole discretion that disclosure would be in furtherance of the CFTC's discharge of its duties and responsibilities or is otherwise required by law.

15. The Monitor and its Subcontractors shall not be liable for any act or omission of the Monitor or its Subcontractors, or any of their partners, employees, or agents, unless it shall be proven that the Monitor or its Subcontractors recklessly or in bad faith acted or failed to act. This provision shall apply to all claims based on conduct during the term of any agreement that may be entered into between the Monitor and its Subcontractors, even if such claims are filed after the termination of any such agreement.

16. Defendant shall indemnify, defend and hold harmless the Monitor, its Subcontractors, and their successors, and assigns, from and against all actions (pending or threatened and whether at law or in equity in any forum), liabilities, damages, losses, costs, and expenses, including but not limited to reasonable attorneys' fees and other professional fees arising from conduct or failures to act of the Monitor or its Subcontractors under the terms of this Order, unless it shall be proven that the Monitor or any Subcontractor recklessly or in bad faith acted or failed to act.

17. From the date of this Order and for a period of two years from completion of the duties required under the Monitor's appointment, the Monitor shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendant, or any of their present or former affiliates, directors, officers, employees, or agents

acting in their capacity. Any firm with which the Monitor is affiliated or of which it is a member, and any Subcontractor, without proper written consent of the CFTC's counsel, may not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Defendant, or any of their present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period from the date of this Order through a period of two years from the completion of the duties required under the Monitor's appointment.

18. The CFTC, in its discretion, may petition the Court to modify the scope of the Monitor's authority to ensure that Deutsche Bank is meeting its reporting obligations with respect to messages submitted pursuant to 17 C.F.R. pts. 23, 43, 45, 46, and/or 50, or relieve the Monitor of all authority.

## II. COURT MAINTAINS JURISDICTION

19. This Order shall remain in effect until further order of the Court and the Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other purposes related to this action.

20. Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings and that in any such proceedings it may not challenge the validity of this Consent Order.

## III. EXPEDITED DISCOVERY

21. The CFTC may conduct expedited discovery, removing the prohibition upon discovery before the early meeting of counsel pursuant to Fed. R. Civ. P. 26(f), in accordance with Fed. R. Civ. P. 26(d), and that the CFTC may take depositions of the Defendant, its employees, agents, affiliates, and representatives, as well as non-parties subject to reasonable

notice pursuant to Fed. R. Civ. P. 30(a) and 45, that notice may be given personally, by facsimile, or by electronic mail, and more than ten depositions may be taken.

## IV. BOND NOT REQUIRED OF PLAINTIFF

22. Because the Plaintiff is an agency of the United States of America, no bond need be posted by the CFTC.

**IT IS FURTHER ORDERED THAT**

23. Upon motion of the Plaintiff, the Court shall determine whether it is appropriate to order additional relief including, but not limited to, a permanent injunction and/or a civil penalty pursuant to 7 U.S.C. § 13a(d) (2012) against Defendant and, if so, the amount of the civil penalty.

24. This Consent Order may be executed, consented to, and approved in any number of counterparts with the same effect as if all parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order Of Preliminary Injunction Against Deutsche Bank AG*.

**IT IS SO ORDERED** on this 20th day of October, **2016**.

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

CONSENTED TO AND APPROVED BY:

Deutsche Bank AG

By: _____
Name: Mathias Otto
Title: Co-General Counsel Germany
Date: Aug 18, 2016

and

By: _____
Name: Thorsten Seyfried
Title: Co-General Counsel Germany
Date: August 18, 2016

Approved as to form:

_____
Kenneth Raisler
Sullivan & Cromwell LLP
Attorney for Deutsche Bank AG

Date: August 18, 2016

_____
Amanda L. Burks
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, D.C. 20581
(202) 418-5968 (direct)
(202) 418-5937 (facsimile)
aburks@cftc.gov

Date: August 18, 2016